BRIDGES, J.,
for the Court:
¶ 1. Clara Mae Coghlan Screws (Screws) and Cóghlan & Sons (Coghlan) filed a complaint in the Chancery Court of Sharkey County seeking monetary damages for lost crops, as well as injunctive relief to unblock their access to an artificial drain on Roy Watson’s property. Watson filed a counterclaim requesting $2,500 to cover costs on improvements to the ditch plus an order requiring Screws and Coghlan to share in future maintenance costs of the ditch. The chancellor entered a judgment denying relief to all parties. Aggrieved with this decision, Screws and Coghlan have perfected this appeal arguing the following assignments of error:
I. ERRED IN FAILING TO FOLLOW THE PRECEDENT OF GEORGIA PACIFIC CORP., ET AL. V. ARMSTRONG IN THIS CASE.
II. WHETHER THE COURT ERRED BY RULING. THAT THE PLAINTIFFS DID NOT PROVE THE ELEMENTS REQUIRED TO ESTABLISH AN IMPLIED EASEMENT TO DRAIN THEIR PROPERTY BY WAY OF THE OBSTRUCTED DITCH.
III. WHETHER THE LOWER COURT ERRED BY FAILING TO APPLY EXISTING FACTORS THAT THIS COURT HAS ESTABLISHED FOR MAKING THE DETERMINATION OF WHETHER AN ASSERTED IMPLIED EASEMENT IS REASONABLY NECESSARY.
Finding no reversible error, we affirm.
FACTS
¶ 2. Screws owns a certain tract of real property that adjoins at the northeast corner of a tract of property owned by Watson. Screws rents her property to Cogh-lan for the purpose of farming soybeans, corn, and sunflowers. Watson also farms his property. Located on the eastern edge of Watson’s property is a drainage ditch that has been in existence for approximately thirty-five years. In May 1998, Watson hired Thomas A. Gordon, an excavation contractor, to clean the existing ditch and make a new ditch. Gordon placed a plug in the previously existing ditch and put spoil between the two ditches. As a result of this ditch work, the drainage of Watson’s property was greatly improved. Another effect was that the northernmost portion of the old ditch was “plugged” or cut off from the original portion of the ditch. Coghlan testified that since Watson plugged the previously existing ditch, their property has been prevented from draining into the old ditch. This caused parts of their property to flood after a rain of approximately three to five inches and resulted in damages to their crops. Watson testified that the ditch work was necessary because Coghlan’s brother-in-law had used dynamite to blow either a beaver dam or a ditch which caused flooding of five acres of property. Watson further testified that he lost his cotton crop due to the water damage.
PROCEEDINGS BELOW
¶ 3. In June 1998, Screws and Coghlan filed a complaint in the Chancery Court of Sharkey County seeking monetary damages for lost crops and injunctive relief to unblock their access to the artificial drain on Watson’s property. The case was tried on August 24, 1998, and the chancellor directed the parties to submit proposed findings of fact and conclusions of law by August 31, 1998. The chancery court denied relief to all parties finding that Screws and Coghlan failed to prove the actions of Watson caused any damage or unreasonably interfered with the use and *1292 enjoyment of their land. The chancellor further found that Screws and Coghlan had no easement for the use of the drainage ditch located solely on Watson’s property. Aggrieved with this decision, Screws and Coghlan have now perfected an appeal to this Court.
ARGUMENT AND DISCUSSION OF LAW
STANDARD OF REVIEW
¶ 4. The standard of review for this Court is well settled. When reviewing the findings of the chancellor, to determine whether an error was committed we must determine “whether his findings amounted to an abuse of discretion, whether they were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Sullivan v. Kolb, 742 So.2d 771 (¶ 10) (Miss.Ct.App.1999) (citing Smith v. Jones, 654 So.2d 480, 485 (Miss.1995)). This Court cannot disturb the findings of the trial court unless “the overwhelming weight of the credible evidence presented on the record goes against or is contrary to the findings of the chancellor.” Sullivan, 742 So.2d at 775 (¶ 10) (citing Collins by Smith v. McMurry, 539 So.2d 127, 129 (Miss.1989)).
I. WHETHER THE LOWER COURT ERRED IN FAILING TO FOLLOW THE PRECEDENT OF GEORGIA PACIFIC CORP., ET AL. V. ARMSTRONG IN THIS CASE.
¶ 5. Screws and Coghlan argue on appeal that under Georgia Pacific Corp. et al. v. Armstrong, if a lower riparian landowner obstructs the flow of a stream or water course, thereby causing his upper riparian neighbor’s land to flood, the latter may secure judicial relief. Georgia Pacific Corp. et al. v. Armstrong, 451 So.2d 201, 203 (Miss.1984). As stated in Georgia Pacific Corp., the plaintiff has the burden of showing that the acts of the lower riparian landowner were a substantial contributing cause of the damages suffered. Id. Screws and Coghlan maintain that they met their burden of proof by showing that Watson hired a contractor to dam his drainage ditch which caused Coghlan to lose his soybean and sunflower crop. Watson contends that he exercised his rights to improve his land. He argues that the appellants have failed to show that he unreasonably interfered with the use of their land, nor did they show substantial cause of damage. The chancellor found that Screws and Coghlan did not prove that Mr. Watson’s actions were a substantial cause of their flood damages.
¶ 6. After reviewing the record, this Court finds that there is substantial evidence to support the chancellor’s findings. Sullivan, 742 So.2d at 775 (¶ 10) (citing Collins by Smith v. McMurry, 539 So.2d 127, 129 (Miss.1989)). The record shows that the property in dispute is a wetland area that is prone to flooding. Testimony was presented at trial that established that there was a sudden, substantial rain in May 1998. Although there is contradictory testimony about the exact rainfall, a neighboring farmer, as well as Watson, both testified that there was a heavy rain that caused most people in the area to lose crops. The appellants contend that Watson’s actions caused the flooding on their property, but there was no expert testimony offered to establish the normal water level of the property. There was also no evidence presented to show the extent that the appellant’s property was drained by the ditch on Watson’s property. The appellants argue that their property had no alternative drainage route. However, Watson and a U.S. forester, Larry Moore, both testified that the Delta National Forest provided Coghlan’s property with natural drainage routes. Moore also testified that there had been problems with beavers blocking the natural drainage routes in the Delta National Forest. Although Screws *1293 and Coghlan asked for damages, the record shows that there was no evidence offered to calculate an award for damages. The chancellor correctly cited Georgia Pacific Corp. and after hearing all evidence, determined that Screws and Coghlan did not show that Watson’s actions were a substantial cause of the flooding that occurred on their property. Georgia Pacific Corp., 451 So.2d at 203. Under our well established standard of review, this Court cannot disturb the chancellor’s findings unless “the overwhelming weight of the credible evidence presented on the record goes against or is contrary to the findings of the chancellor.” Sullivan, 742 So.2d at 775 (¶ 10) (citing Collins by Smith, 539 So.2d at 129). After reviewing the evidence presented on record, we find that there is sufficient evidence to support the chancellor’s findings. Id. Accordingly, this issue is without merit.
II. WHETHER THE LOWER COURT ERRED BY RULING THAT THE PLAINTIFFS DID NOT PROVE THE ELEMENTS REQUIRED TO ESTABLISH AN IMPLIED EASEMENT TO DRAIN THEIR PROPERTY BY WAY OF THE OBSTRUCTED DITCH.
III. WHETHER THE LOWER COURT ERRED BY FAILING TO APPLY EXISTING FACTORS THAT THIS COURT HAS ESTABLISHED FOR MAKING THE DETERMINATION OF WHETHER AN ASSERTED IMPLIED EASEMENT IS REASONABLY NECESSARY.
¶ 7. In issues II and III, Screws and Coghlan argue that the lower court erred in its ruling that they did not meet their burden of proof in establishing an implied easement to drain their property by way of Watson’s ditch. Under Mississippi law, “an easement may be created by grant, implication, or prescription.” Gulf Park Water Co. Inc. v. First Ocean Springs Dev. Co., 530 So.2d 1325, 1330 (Miss.1988) (citing Mississippi State Highway Comm’n v. Wood, 487 So.2d 798, 804 (Miss.1986)) (other citations omitted). “[A]n implied easement must be continuous, apparent, permanent and necessary.” Gulf, 530 So.2d at 1330 (quoting Hutcheson v. Sumrall, 220 Miss. 834, 840, 72 So.2d 225, 227 (1954)). The trial court found that the plaintiffs failed to establish the necessary element which is one of the four elements needed to prove that an easement is an implied easement. Screws and Coghlan maintain that the drainage easement is one of reasonable necessity.
¶ 8. In Gulf, the Mississippi Supreme Court found that,
strict necessity is not required for an implied easement when the easement is not in the form of a way of necessity. If the easement sought is not a way of necessity, all that must be proven is a reasonable necessity. The Court in Wood and Fourth Davis spoke of these implied easements as being “highly convenient or essential to the full enjoyment of the land.” Wood, 487 So.2d at 804; Fourth Davis Island Land Co. v. Parker, 469 So.2d 516, 520-21 (Miss.1985). “[T]he necessity should be judged by whether an alternative would involve disproportionate expense and inconvenience, or whether a substitute can be furnished by reasonable labor or expense.” Fourth Davis, 469 So.2d at 521.
Gulf, 530 So.2d at 1330-31. Screws and Coghlan contend that there are no drainage alternatives to the obstructed ditch and that they need the ditch to function properly in order to ensure that their property drains adequately. They further argue that the trial court is manifestly wrong and should be reversed for not applying the factors established under Mississippi law to determine whether an asserted implied easement is reasonably necessary. Watson maintains that the trial court correctly held that the plaintiffs failed to prove the necessary element. *1294 Watson argues that at least two alternative drainage routes were shown to exist, and these routes were not shown to be inadequate.
¶ 9. After careful review of the underlying facts and the record, we hold that the chancellor’s finding that Screws and Cogh-lan did not establish an implied easement is proper. Based on the testimony at trial, the chancellor found that Screws and Coghlan failed to prove‘that the drainage ditch on Watson’s property was their only drainage route. The chancellor further found that Screws and Coghlan failed to show that their need to use the drainage ditch outweighed Watson’s right to have freedom in the use of his property. The chancellor concluded that Screws and Coghlan failed to prove that Watson’s actions unreasonably caused them any injury.
¶ 10. The record shows that Watson and U.S. Forester Moore testified that alternative drainage routes existed. The record further reflects testimony that the property at issue was a wetland area with no testimony of the area’s normal water level. There was also testimony that others in the area experienced crop losses because of heavy rainfall. Coghlan also acknowledged that Delta National Forest which bordered his property contained natural drainage routes. After reviewing the record, we find the chancellor’s decision to be supported by substantial evidence with no evidence of manifest error. Sullivan, 742 So.2d at 775 (¶ 10). In the absence of such error or abuse of discretion, this Court will not disturb the factual findings of the chancellor. Id. Accordingly, we find no merit to these assignments of error.
¶ 11. THE JUDGMENT OF THE SHARKEY COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.