841 So.2d 1204 (2003)
T.C. BROOME, Appellant
v.
Sheila BROOME, Appellee (Two Cases).
Nos. 2000-CA-01122-COA, 2000-CA-02098.
Court of Appeals of Mississippi.
April 8, 2003.
*1205 Mark H. Watts, Pascagoula, for appellant.
William T. Reed, Pascagoula, for appellee.
Before KING, P.J., THOMAS and CHANDLER, JJ.
CHANDLER, J., FOR THE COURT:
¶ 1. T.C. Broome appeals from a judgment of the Jackson County Chancery Court requiring this Court to address whether the chancery court was correct in: (1) awarding sanctions for his failure to comply with court orders to produce financial records, (2) finding him in contempt for failure to obtain a life insurance policy, and (3) awarding permanent alimony. Finding no error we affirm.

STATEMENT OF THE CASE
¶ 2. This appeal arises from two consolidated actions, both stemming from a divorce granted by the Chancery Court of Jackson County. The chancery court entered a judgment of divorce in 1993, but delayed making findings of fact as to marital assets and division of property until June 16, 1995. Following the judgment for divorce, both parties filed post-trial motions, and the chancery court overruled both motions on September 20, 1995. On October 12, 1995, Sheila Broome filed the first of two petitions for citation for contempt, alleging, inter alia, that T.C. Broome was failing to comply with an order to pay temporary alimony of $3,000 per month and that he furnish information to determine the value of one of the marital assets. On October 19, 1995, while the petition for citation for contempt was pending, T.C. Broome filed a notice of appeal stemming from the September 20, 1995 final judgment on the division of property. One day later, Sheila Broome filed a notice of cross-appeal.
¶ 3. There were two appeals. First, the appeal and cross-appeal from the judgment on the division of property proceeded to this Court. On May 20, 1997, this Court reversed and remanded to the chancery court with a mandate to award periodic alimony and to make a judicial determination of the worth of one of the marital assets, the T.C. Broome Construction Company (Broome Construction). Broome v. Broome, No. 95-CA-1110, slip op. at 4-5, 695 So.2d 603 (Miss.Ct.App. 1997). This Court found that Sheila Broome had proven an award of permanent alimony was warranted, as well as that the valuation of Broome Construction was "arrived at unilaterally" by T.C. Broome. Id. On June 30, 2000, the chancery court entered a judgment awarding, inter alia, $3,000 per month in permanent periodic alimony, and $173,160 for her interest in Broome Construction. This amount was calculated from an independent expert valuation.
¶ 4. A second appeal arose from the initial petition for contempt. On August 9, 1996, the chancery court entered a judgment in favor or Sheila Broome, and twenty days later, T.C. Broome filed a motion to set aside the judgment. From the record, it appears that the two primary issues going to whether T.C. Broome was complying *1206 with the chancery court orders were: whether he was providing financial documents for the chancery court, and later a special master, to evaluate the worth of the construction company; and, whether he obtained a $950,000 life insurance policy. While the record reveals a variety of pleadings, cross-pleadings, hearings and judgments concerning the judgment on the petition for citation for contempt, ultimately, on August 8, 2002, our supreme court entered an order dismissing the motion to set aside holding that the motion was untimely according to M.R.C.P. 59. This order caused any issue before this Court which stemmed from the August 9, 1996 contempt judgment, to become moot.
¶ 5. Pursuant to our supreme court's order of dismissal, the only issues present before this Court go to the judgment entered by the chancery court on remand from this Court.

DISCUSSION

I. AWARD OF SANCTIONS
¶ 6. This Court's remand to the chancery court in part concerned the division of the marital asset, Broome Construction. The chancery court initially awarded Sheila Broome 30% of the couple's 60% ownership interest in that company. However, the only valuation of the company's worth was an unverified statement by T.C. Broome. This Court, therefore, remanded for a judicial valuation, stating, "[w]e strongly suggest that the chancery court employ financial experts to assist the court in valuing Sheila's interest in the T.C. Broom Construction Co."
¶ 7. Upon remand, on December 8, 1997, the chancery court ordered T.C. Broome to turn over financial documents for the valuation to an independent expert by December 15, 1997. Despite that order, T.C. Broome failed to comply until Sheila filed a second petition for citation for contempt on April 13, 1998. There was a hearing on June 3, 1998, and the chancery court imposed $15,000 in sanctions holding that T.C. Broome had not complied with its order to turn over the records to the independent expert. The imposition of sanctions is subject to an abuse of discretion standard of review. Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990).
¶ 8. During his testimony at the hearing, T.C. Broome attempted to portray the non-compliance as a series of unwitting mistakes. The record, however, amply supports a finding of willful refusal to comply with the expert's efforts to properly value Broome Construction. As the chancery court stated in its judgment, T.C. Broome made no attempt to request more time to comply or to advise the chancery court of any difficulties he had in producing or delivering the documents. Moreover, the chancery court found that T.C. Broome had engaged in "unjust delay tactics in attempting to postpone this Court's monetary awards to Sheila Broome." The record reveals that even before this Court heard the first appeal, T.C. Broome had evaded attempts to reveal documents that would show Broome Construction's worth. His refusal to reveal these documents was in fact what prevented the chancery court from determining the company's worth, upon which this Court initially remanded. Given these dilatory tactics, the chancery court's imposition of sanctions is supported by the record. There is no merit to this issue.

II. CONTEMPT
¶ 9. The judgment for divorce entered on June 16, 1995, required T.C. Broome to obtain a $950,000 life insurance policy naming Sheila Broome and the couple's two children as beneficiaries. This Court's *1207 opinion of May 20, 1997, did not alter that ruling. Following the June 3rd, 1998 hearing on the petition for citation of contempt, the chancery court found that T.C. Broome was in contempt of court for failing to obtain a $950,000 life insurance policy.
¶ 10. In reviewing a citation for contempt, an appellate court must first determine whether the alleged contempt is either civil or criminal in nature. Dennis v. Dennis, 824 So.2d 604(¶ 7) (Miss.2002). If the purpose of the finding of contempt is to enforce the rights of private litigants or an order of a court, the contempt is civil. Purvis v. Purvis, 657 So.2d 794, 797 (Miss. 1994). In this case, the contempt is civil in nature. A finding of civil contempt is subjected to manifest error review. Dennis, 824 So.2d at (¶ 7).
¶ 11. The record reveals that T.C. Broome misinformed the chancery court concerning whether he complied with the order that he obtain this insurance. There is no showing that T.C. Broome even attempted to comply with the 1995 order, until after the initial contempt proceeding and an order of August 9, 1996, ordering him to furnish proof of insurance. In February of 1998, T.C. Broome informed the chancery court that he had taken steps to allow Sheila Broome and the two children to in effect become beneficiaries of a life insurance policy he had through Broome Construction. However, one month later, the insurance company advised him that the policy would only provide death benefits to his business partner. The chancery court was not advised of this fact. When Sheila Broome learned that the insurance policy did not provide benefits to her and the children, she returned to the chancery court with her second petition for citation for contempt, to enforce the 1995 order. The chancery court then entered its order of contempt on August 28, 1998. Following the contempt order, T.C. Broome asserted that he was unable to comply with the chancery court, because he had heart disease which made it impossible to obtain life insurance. However, prior to the finding of contempt, the chancery court explicitly instructed him to produce denials of coverage if he intended to defend the contempt charge upon this ground, and he failed to do so. Based upon these facts, we cannot say the chancery court manifestly erred in finding T.C. Broome in contempt. There is no merit to this assignment of error.

III. PERMANENT ALIMONY
¶ 12. This Court found that permanent alimony was warranted in this case and remanded to the chancery court for a finding on the amount of alimony. On December 1, 1997, the chancery court conducted a hearing on the permanent alimony issue. The final judgment setting permanent alimony at $3000 per month was only entered on June 30, 2000. T.C. Broome asserts both that the evidence introduced in 1997 did not support the amount awarded in the final judgment, as well as that during the time from 1997 until he briefed this issue for this Court, his health and earning capacity have declined. Sheila Broome asserts that the issue of permanent alimony is not before this Court, and our supreme court's order of August 8, 2002 mooted this issue.
¶ 13. Sheila Broome's assertion is misplaced, and the issue of permanent alimony is before this Court. Our supreme court's August 8, 2002 order was entered in cause number 2002 2098, which arose from the motion to set aside the original judgment of contempt. However, that judgment did not address the issue of permanent alimony. The issue of how much permanent alimony was warranted only arose after this Court's remand, which was entered in cause number XXXX-XXXX, and *1208 our supreme court's order was not addressed to this cause.
¶ 14. A chancery court's award of alimony will only be reversed if it is in manifest error. Henderson v. Henderson, 757 So.2d 285 (¶ 41) (Miss.2000); Voda v. Voda, 731 So.2d 1152 (¶¶ 10-11) (Miss. 1999) (citing Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)). In this case, the chancery court heard evidence that T.C. Broome's net income was approximately $310,000 in 1995 and $150,000 in 1994. Sheila Broome had no income, other than child support of $1000 per month. Sheila Broome testified that her needs were approximately $4,600 per month. It was undisputed that T.C. Broome committed adultery, and that he had remarried and purchased property and recreational equipment. While the incomes and needs of parties obviously can change over time, and awards are subject to modification, the record shows that the delay between the time the hearing was held and the final order entered was attributable to T.C. Broome's failure to comply with the chancery court orders. Upon this record, the chancery court did not abuse its discretion. There is no merit to this assignment of error.
¶ 15. THE JUDGMENTS OF THE JACKSON COUNTY CHANCERY COURT ARE AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THESE APPEALS ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND GRIFFIS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.